UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KASRA REZAEE,**

    **Petitioner,**

v.    Case No.:  6:25-cv-1140-CEM-DCI

**PRESIDENT OF THE UNITED STATES; SECRETARY, DEPARTMENT OF HOMELAND SECURITY; U.S. ATTORNEY GENERAL; DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ASSISTANT FIELD OFFICER IN CHARGE OF MIAMI FIELD OFFICE; and CHIEF, ORANGE COUNTY CORRECTIONS DEPARTMENT;**

    **Respondents.**
_____/

**ORDER**

THIS CAUSE is before the Court on Petitioner Kasra Rezaee's Amended Petition for Writ of Habeas Corpus ("Amended Petition," Doc. 9) and Amended Motion for Temporary Restraining Order and Preliminary Injunction ("Amended Motion for TRO," Doc. 10). Respondents filed a Response in Opposition to the Amended Motion for TRO and a Motion to Dismiss ("Response and Motion to Dismiss," Doc. 17). Petitioner filed a Reply to the Response and Motion to Dismiss (Doc. 21). For the following reasons, the Amended Petition and the Amended

Motion for TRO will be denied.

## I. BACKGROUND

Petitioner, an Iranian citizen, entered the United States in February 2023 and was apprehended by the Department of Homeland Security ("DHS"). (Doc. 10-1 at 1). DHS found Petitioner had a credible fear of persecution or torture and subsequently initiated removal proceedings against him, charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* at 1-2). An Immigration Judge ("IJ") found Petitioner was removable under section 212(a)(6)(i) of the Immigration and Nationality Act ("INA"), and on February 16, 2023, Petitioner was issued an expedited order of removal. (Doc. Nos. 10-2 at 2, 17-2 at 1).

On the same date, Petitioner filed "a timely Form I-589, application for asylum, withholding of removal, and protection under the Convention Against Torture" ("CAT"). (Doc. Nos. 10-2 at 2, 17-3 at 1-4). On February 21, 2023, Petitioner was charged in the United States District Court for the Western District of Texas with failure to comply with reporting requirements in violation of 19 U.S.C. § 1459(a). He was later convicted and sentenced on July 27, 2023, to seven months of imprisonment with credit for time served from February 12, 2023. (Doc. 17-1 at 1-9). On September 14, 2023, Petitioner was taken into DHS Immigration and Customs Enforcement ("ICE") custody. (Doc. 17-4 at 1-4).

On January 12, 2024, Petitioner was paroled from DHS custody and has been

living and working lawfully since then. (Doc. Nos. 10-1 at 2, 17-6 at 1-2). Petitioner's parole expired on January 12, 2025. (*Id.*)

On June 25, 2025, during a hearing on his application for relief from removal, ICE agents arrested Petitioner and his uncle, without explanation, before Petitioner's testimony concluded. (Doc. Nos. 9 at 4; 10-3 at 2). Petitioner's counsel asked the IJ at that time for a bond hearing. (Doc. Nos. 9 at 4, 10-1 at 2). The IJ denied the motion as follows:

> The Court does not have jurisdiction to determine bond in this case. First, the respondent was arrested by DHS but the Court does not know respondent's current detention status as DHS has not yet filed a Form I-200 (Warrant for Arrest of Alien), or a Form I-286 (Notice of Custody Determination), or a Form I-830 (Notice to EOIR: Alien Address). Thus, it is unknown where respondent will be detained once he has been processed by ERO, if he will remain in DHS custody, if he will be granted a DHS bond, if he will be released on an Order of Release on Recognizance, or if he will be held on grounds of mandatory detention. Applications for the exercise of authority to review bond determinations shall be made to one of the following offices, in the designated order: (1) If the respondent is detained, to the Immigration Court having jurisdiction over the place of detention; (2) To the Immigration Court having administrative control over the case; or (3) To the Office of the Chief Immigration Judge for designation of an appropriate Immigration Court. Until such time that a Form I-830 has been filed with the Court, the Court cannot determine that the respondent is (1) being detained by DHS, and (2) where he is being detained. As DHS has not yet made an initial custody determination, this Court lacks jurisdiction at this time to redetermine DHS' custody determination. See 8 CFR § 1236.1(d).

> Further, the respondent is currently in removal proceedings. Bond proceedings have not been initiated yet. Bond proceedings are separate and distinct from removal proceedings. See 8 C.F.R. 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."); see also Matter of Guerra, 24 I&N Dec. 37, 40 n.2 (BIA 2005) ("Bond proceedings are separate and apart from the removal hearing."); Matter of E-Y-F-G-, 29 I&N Dec. 103, 105 (BIA 2025).
>
> As such, the Court lacks jurisdiction to determine bond and denies respondent's motion for bond.

(Doc. 10-2 at 2-3).

Although his uncle was released the same day, Petitioner was detained at the Orange County Correctional Facility and subsequently transferred to the Broward Transitional Center, where he remains. (Doc. Nos. 9 at 1, 4; 17 at 3). A hearing with the Immigration Court was scheduled on July 16, 2025. (Doc. 17-10 at 1).

Petitioner maintains that his detention without an arrest warrant or notice of revocation of parole violates his Fifth Amendment right to substantive due process and his detention exceeds ICE's statutory authority. (Doc. 9 at 7-8). Petitioner requests the Court to assume jurisdiction over the case, enjoin Respondents from transferring him outside the Middle District of Florida, and order his immediate

release or a bond hearing.[1] (*Id.* at 2, 8-9).

## II. APPLICABLE LAW

Section 2241 permits a district court to grant a petition for writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "In a § 2241 habeas corpus case, '[the] petitioner has the burden of establishing his right to federal habeas relief.'" *United States v. Nickson*, 553 F. App'x 866, 869 (11th Cir. 2014) (quoting *Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006)).

Dismissal under Rule 12(b)(1) is warranted if a plaintiff fails to demonstrate that the Court has subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party invoking jurisdiction "bears the burden of demonstrating that the matter falls within the Court's subject-matter jurisdiction." *Alfassi v. Garland*, 614 F. Supp. 3d 1252, 1254 (S.D. Fla. 2022) (citing *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists." *Id.* (citing *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004). A federal court must dismiss an action if it concludes "at any time during the litigation that it lacks subject-matter jurisdiction[.]" *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

---

[1] The Amended Motion for TRO similarly requests the Court to enjoin Petitioner's transfer outside this district. (Doc. 10).

A court's issuance of a temporary restraining order "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). A party seeking a temporary restraining order or preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant, and (4) that the entry of relief would serve the public interest. *See Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014) (citing *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001)).

### III. Discussion

Petitioner's Amended Petition and Amended Motion for TRO are subject to dismissal for the following reasons. "Federal courts are 'courts of limited jurisdiction,'" which "'possess only that power authorized by Constitution and statute.'" *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271 (11th Cir. 2021) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). One statute that limits federal courts' jurisdiction is 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General

to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). This statute expressly includes claims raised in § 2241 habeas corpus actions. *Id.* The Eleventh Circuit Court of Appeals has indicated that "[s]ecuring an alien while awaiting a removal determination constitutes an action taken to commence proceedings" as contemplated by § 1252(g). *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013).

Likewise, under 8 U.S.C. § 1252(a)(2)(B)(ii), the Court lacks jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." Thus, district courts are precluded from considering "challenges to actual discretionary decisions to detain an alien or to seek removal of the alien or to any discretionary judgment, action, or decision. . . ." *Dorley v. Normand*, No. 5:22-CV-62, 2023 WL 3620760, at *2 (S.D. Ga. Apr. 3, 2023), *report and recommendation adopted*, No. 5:22-CV-62, 2023 WL 3174227 (S.D. Ga. May 1, 2023).

As relevant in this case, the Secretary of DHS has discretion to:

> parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but. . . when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have

> been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). The decision to deny or revoke parole "is precisely the kind of discretionary decision that § 1252(a)(2)(B) precludes" a district court from reviewing. *Clifton M. v. Decker*, No. CV 18-15760 (KM), 2019 WL 13298586, at *4 (D.N.J. Mar. 19, 2019); *see also Doe v. Rodriguez*, Civ. A. No. 17-1709 (JLL), 2018 WL 620898, at *8 (D.N.J. Jan. 29, 2018) ("The effect of [8 U.S.C. § 1252(a)(2)(B)(ii)] on habeas claims challenging discretionary parole denials is clear—the Government 'can and often does release . . . alien[s] on parole, but [the] decision to do so is not judicially reviewable.'" (quoting *Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007)). Section 1252(a)(2)(B)(ii)'s bar "applies equally to an initial denial of a request for discretionary parole or a decision to terminate discretionary parole." *Clifton M.*, 2019 WL 13298586, at *3 n.5.

Here, Petitioner's claims arise from the termination of his parole and ICE's decision to take him into custody pending his removal determination. Candidly, the Court can discern no reason why Petitioner was taken into custody before the conclusion of his hearing, and such action seems counterintuitive. Nevertheless, these matters involve the discretionary authority granted to DHS under § 1182(d)(5)(A) and the decision to commence a proceeding under § 1252(g) by

"[s]ecuring an alien while awaiting a removal determination," which preclude the Court's review. Therefore, this Court lacks jurisdiction to grant the relief Petitioner requests. *See, e.g., Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *2–4 (W.D. Pa. Mar. 12, 2024) (concluding, based on 8 U.S.C. § 1252(g), that the court lacked jurisdiction to consider the claims of an "arriving alien", whose parole was terminated, that his Fifth Amendment substantive due process rights and Sixth Amendment right to speedy trial were violated because ICE arrested him when he was going to criminal court).

Alternatively, assuming the Court has jurisdiction, Petitioner has not demonstrated he is entitled to relief. "[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* As relevant here, "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing 8 U.S.C. §§ 1225(b)(1)(A)(i), 1182(a)(6)(C), (a)(7)).

"[A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Id.* at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). Parole on these bases, however, "'shall not be regarded as an

admission of the alien.'" *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). Importantly, when in the opinion of DHS, the purposes of parole have been served, the alien shall forthwith (immediately) be returned to DHS custody and his case shall continue to be dealt with in the same manner as other applicants for admission to the United States. 8 U.S.C. § 1182(d)(5)(A). Moreover, "[p]arole shall be automatically terminated without written notice. . . at the expiration of the time for which parole was authorized. . . ." 8 C.F.R. § 212.5(e)(1).

In rejecting claims for violation of the Fifth and Fourth Amendments based on the petitioner's re-detention after the revocation of his parole, one court reasoned:

> In his Third Cause of Action, petitioner contends that an arriving alien, once granted parole, cannot be re-detained without the full panoply of procedural rights ordinarily associated with revocation of criminal parole, including "notice of the intention to detain and the justification for detention, service of the evidence proving the justification for detention, the right to contest the allegations and be represented by counsel, and an opportunity to appeal the revocation determination." Pet. ¶ 40 (citing *Morrisey v. Brewer*, 408 U.S. 471 (1972)); *see also* Pet. Mem. at 21-22 (petitioner's re-detention "violate[d] a liberty interest that cannot be unilaterally revoked without adequate due process under the Fifth Amendment").
>
> *As applied to the revocation of humanitarian parole granted pursuant to § 1182(d)(5)(A), petitioner's Fifth Amendment claim fails at the first hurdle. Because the statute "makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General," it "does not create any liberty interest in temporary parole that is protected by the Fifth Amendment." Kwai Fun Wong v.*

*United States*, 373 F.3d 952, 968 (9th Cir. 2004) (affirming dismissal of claim that the revocation of petitioner's § 1182(d)(5)(A) parole violated the Due Process Clause). *Accord Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1443 (5th Cir. 1993) (since § 1182(d)(5)(A) "does not require the Attorney General to parole any alien," petitioners had "no liberty interest" in being paroled under § 1182(d)(5)(A) and consequently were not entitled to "the same due process rights to the initial revocation of their immigration parole as those granted to criminal parolees"), *amended*, 997 F.2d 1122 (5th Cir. 1993). As the Second Circuit explained in *Ofosu*, since immigration parole "is a matter of the Attorney General's discretion," it "may be ended without hearings or special forms." 98 F.3d at 700.

* * *

Expressly likening the revocation of immigration parole under § 1182(d)(5)(A) to a criminal arrest, petitioner contends in his Fourth Cause of Action that his re-detention, without a judicially-reviewed "probable cause" determination, violated his Fourth Amendment right to be free from unreasonable seizures. Pet. ¶¶ 44-45; see also Pet. Mem. at 14 ("there is no evidence of any cause – let along [sic] probable cause – to justify the re-detention of Mr. Bermudez Paiz on or about August 11, 2017").

Petitioner is of course correct that "the Fourth Amendment requires government agents to have probable cause to arrest an individual whom they believe has committed a crime." Pet. Mem. at 9 (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)). *Similarly, "an immigration agent must have probable cause to arrest a person for a suspected immigration violation." Id.* (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975)). *But petitioner was not arrested because he was suspected of a crime or an immigration violation. He was re-detained because DHS terminated his humanitarian parole, which it was authorized to do whenever "in the opinion" of an*

> *appropriate ICE officer "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i); Ofosu, 98 F.3d at 700.*
>
> *As a matter of logic, it makes little sense to demand that DHS present "evidence," at a probable cause hearing, to "justify" that which it is entitled to do without any. As a matter of law, the Fourth Amendment – which, like the Fifth, provides "the most protection" to citizens and lawful residents and "the least" to non-admitted aliens, Tungwarara v. United States, 400 F. Supp. 2d 1213, 1218 (N.D. Cal. 2005) – cannot protect an arriving alien, paroled into the United States pursuant to § 1182(d)(5)(A), from being re-detained in accordance with that statute's implementing regulations.*

*Bermudez Paiz v. Decker*, No. 18CV4759GHWBCM, 2018 WL 6928794, at *17-18 (S.D.N.Y. Dec. 27, 2018) (emphasis added).

In this case, there is no dispute that Petitioner's parole concluded on January 12, 2025, at which time his parole automatically terminated under 8 C.F.R. § 212.5(e)(1). At that time, DHS was permitted to return Petitioner to its custody, pending his removal proceedings. Importantly, Petitioner was not entitled to written notice that his parole had terminated. 8 C.F.R. § 212.5(e)(1). Consequently, ICE had authority under § 1182(d)(5)(A) to re-detain Petitioner on June 25, 2025, and to hold him pending his removal proceedings.[2]

Again, in the Court's purview, Respondents' action in re-detaining Petitioner

---

[2] Because Petitioner has been detained for only approximately one month, the Court finds that any claim that his detention without a bond hearing is unconstitutional is premature.

before the conclusion of his hearing was nonsensical. However, the Court cannot find that Respondents' action in doing so, or in continuing to detain Petitioner, was or is illegal or unconstitutional because his parole had terminated. *See, e.g., Rodrigues De Oliveria v. Joyce*, No. 2:25-CV-00291-LEW, 2025 WL 1826118, at *5 (D. Me. July 2, 2025) ("As the Government points out, '[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest . . . occurred.'" *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). Put differently, '[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding.'" *Id.* (quoting *In re Lopez-Mendoza*, No. A22452208 (BIA, Sept. 19, 1979)). Thus, even if Petitioner's initial arrest was unlawful, her detention pending removal may stand.").

To the extent Petitioner seeks to enjoin Respondents from transferring him outside this district because it will impede his removal proceedings, such relief is not warranted. "Claims regarding prison transfers are generally not cognizable under § 2241." *Rathod v. Barr*, No. 1:20-CV-161-P, 2020 WL 1492790, at *2 (W.D. La. Mar. 5, 2020) (denying immigration detainee's request to enjoin ICE from transferring him to another facility), *report and recommendation adopted*, No. 1:20-CV-161-P, 2020 WL 1501891 (W.D. La. Mar. 25, 2020); *see also Greenhill v. Menifee*, 202 F. App'x 799, 800 (5th Cir. 2006) (affirming denial of claim as not

cognizable under § 2241 "because prisoners lack a constitutionally protected interest in where they are incarcerated"); *Zapata v. United States*, 264 F. App'x 242, 243-44 (3d Cir. 2008) (district court lacked jurisdiction over a § 2241 petition that challenged a transfer). Further, the Attorney General is tasked with determining where aliens will be detained. *See* 8 U.S.C. §1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."). Petitioner "does not have a right to be housed in any particular facility, nor does this court have the authority to order the ICE to house [him] in any particular facility." *Rathod*, 2020 WL 1492790, at *2; *see also Woldegiorgise v. Immigration & Customs Enf't*, 1:12-CV-02778, 2013 WL 664160, at *2 (W.D. La. Jan. 23, 2013) (denying request to enjoin ICE from transferring detainee because a detainee "does not have a right to be housed in any particular facility, nor does this court have the authority to order the ICE to house [the detainee] in any particular facility"), *report and recommendation adopted*, 2013 WL 672388 (W.D. La. Feb. 22, 2013); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1047 (S.D. Fla. 1990) (denying motion for preliminary injunction to enjoin ICE from transferring the petitioner). Finally, there is no indication that Petitioner's transfer will hinder his removal proceedings or his ability to participate in his removal proceedings. As noted previously, Petitioner had a proceeding scheduled before an IJ on July 16, 2025.

For all these reasons, this action is subject to dismissal. As such, Petitioner has not shown a substantial likelihood of success on the merits or an irreparable injury if an injunction is not granted as required for a temporary restraining order or preliminary injunction. Consequently, the Amended Petition and Amended Motion for TRO will be denied, and this action will be dismissed.

Accordingly, it is **ORDERED** and **ADJUDGED** that:

1. Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 9) is **DENIED** and **DISMISSED**.

2. Petitioner's Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10) is **DENIED**.

3. The Clerk of Court is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on July 29, 2025.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Party
Counsel of Record